In this case, unlike the last case, the immigration judge presumed that the petitioner, Mr. Singh, did suffer past persecution on account of a protected ground. Under the regulations, therefore, it must be presumed that he has a well-founded fear of persecution on the basis of the original claim. Now, the original claim in this case concerned four incidents, each of which was sparked by Mr. Singh's involvement in or the planning of a public protest. First, he was attacked by masked men after participating in a protest to commemorate Operation Blue Star. Then he was clubbed and arrested while protesting Indian Independence Day. Then he was arrested the morning after he attended a meeting at which they were planning another protest. And then there was an attempted arrest where he was chanting slogans in favor of Khalistan. That's the original claim. The presumption is based on that claim. Now, his testimony is entirely consistent, and there's a critical document here in the record, and this is at page 248, that says that members of the Man Party are not generally harassed or ill-treated by the police, but they may be harassed or arrested, quote, for participating in party gatherings, publicly complaining about the treatment of Sikhs by Indian authorities, or calling for the creation of Khalistan. That same report at page 249 says, it describes Man Party members being taken into preventive detention in advance of demonstrations or events. It says that members are, quote, often arrested during political agitations. I've seen most of that from quite a while ago. Now, this is a 2012 report. It's the most recent report in the record. It describes youths being arrested for, quote, raising Khalistan slogans. And it notes that the leader of the party, Simranjit Singh Man, has had 80 different cases filed against him, usually for sedition, and it says that the cases have been filed throughout Punjab and outside the state for advocating for Khalistan. This is important because Mr. Singh credibly testified that if he returned, he wouldn't just continue to be a member. He would continue to participate in rallies and demonstrations, the exact sorts of activities that led to his earlier problems with the Indian authorities. Now, the immigration judge, in assessing whether or not he could relocate, made the same error as in the last case. Because, again, three of these cases are the same immigration judge, basically producing almost identical analysis. But in the immigration judge's decision, he talks about tenant verification. But what he says about tenant verification is that it refutes Singh's suggestion that the Punjab police would be able to use that system to locate him anywhere in India. Again, the judge's focus is on the Punjab police. When he talks about accessibility, whether some Sikhs can move to other parts of the country, he said that they can, and this includes Sikhs who move, quote, to avoid the attention of the local police in their home area. That would be the Punjab police, once again. He goes on to talk about the central police, but he never discusses whether Mr. Singh would be able to engage in these rallies and demonstrations that led to his past persecution, and avoid problems by the state police in that new area of relocation. That's the key question, but they didn't address it. Is the IJ and then later the BIA required to consider matters that were not raised by the petitioner in this case? In other words, did he say, hey, look, you've talked about the Punjab police, but I'm worried about the state police. I'm also worried about private actors. Yeah, he raised this issue, Your Honor. In his closing arguments before the immigration judge, for example, this is at 213. He said relocation's not reasonable because, quote, his separatist political beliefs about a state for Sikhs will get him into trouble. He went on to say this client might be okay if he gives up his political beliefs and whatever he thinks and believes in, and then goes to some remote part of India. But I personally do not think that anybody should be allowed to be robbed of what they believed in just to survive. But his lawyer's saying that, right? Right, he's raising the issue directly with the judge. But doesn't that go to the issue of whether he has to be quiet? That's not what we're talking about. We're talking about whether he raised the issue of whether the state police or private actors would be the persecutors. Now, he's arguing, going back to that, Your Honor, first, since there's an assumption here of past persecution, it's assumed that no matter where he goes in India, he's going to be persecuted for the same sorts of activities that he engaged in previously, whether it be by the state police or private actors. It doesn't matter. The government would have to refute both because there's a finding of past persecution here. Is there a finding that the state police were involved before? Yeah, the Punjab police or the state police. Well, I'm separating the Punjab police and the state police. Because I think you're saying that the Punjab police, they talked about them, but they didn't talk about the state police. So I'm saying, is there anything that he said about the state police separating them for a moment from the Punjab police, even though they may be part of the state police overall? Well, they're different state police. And he didn't discuss being persecuted by other state police because he's never lived outside Punjab. And he's never been persecuted by them? No, of course not, because he's never lived in their jurisdiction. Has he ever been persecuted by private parties outside of Punjab? Of course not, because he's never lived outside Punjab except for the 25 days he was in Delhi. Then you get back to this issue, at least that I struggle with, which is, you really get into debating something that's, you almost have to assume potential harm that has not been raised by anybody. You're saying that because of the presumption, you have to assume that anything that might occur outside the state of Punjab, that he suffered there, the government has to respond to that somehow, that he can do it safely. That he can advocate actively. That's the nature of the presumption, that he's at risk for the characteristics that led to his persecution in Punjab, if he were to relocate to some other state. And are you saying that we should assume that the presumption applies to different police departments? Because it wasn't a national police department who did this, it was the Punjab police. And the Punjab area has, I mean, actually, I think it's the area where most, or the vast majority, in fact, it's majority Sikh. Right. Under MZMR, the board's most important decision on this, the government has to identify a location where the circumstances are substantially better for an individual like Mr. Singh than they were in Punjab. Well, can't they just say, okay, it's better, there are no Punjab police? No, because if you look at where the presumption came from, the presumption, if you go back and you look at this case, it's called NMA. That case preceded the 2000 regulations, and in that case, that's kind of how the board was looking at it. They were saying the presumption applies to the original persecutors. Two years later, when they codified the regulations, they didn't adopt that language. They said the persecution applies unless the threat is unrelated to the past persecution. They said it has to, and if you look at the case matter of AT, which I submitted, that case makes clear that for the presumption not to apply, it has to be a different persecutor, and it has to be unrelated to the persecution that occurred in the past. Here, you might have a different persecutor, the state police. I would argue it's the same persecutor because it's the Indian government, but the claim is not unrelated, and that's the test in the regulations. Do you want to save any rebuttal time because this time you don't have any extra, okay? Thank you. If I ask a question, would you address the CAT claim? I believe that there's a failure to address that issue by the VIA. Yeah, in the CAT, this is the one case where I do think you have to have a remand on the CAT claim. The board did not address his testimony that he would continue to engage in these same sorts of activities, certainly relevant to the CAT claim under this court's decision in EDU, written by Judge Fernandez. It didn't address the fact that most of the Khalid al-Mans political events take place in Punjab. Hold on one second here. Oh. In this case, the board simply said that they didn't address the CAT claim, that there were no arguments made, but he cited the CAT. He claimed his eligibility for CAT three times in the brief. He didn't present a detailed argument, but in this case, the decision denying CAT was based entirely on the relocation analysis. And since he challenged the relocation analysis, clearly he challenged the CAT claim, particularly when it was in his prayer for relief as well. Well, the government in this one has agreed that the CAT claim should be remanded if there was exhaust. Yeah. Thank you. We'll hear from the government. Good morning. Good morning, Your Honors. Any senator for the respondent? Your Honor, substantial evidence supports the agency's decision that the DHS did follow the relevant regulations and applied the governing law to meet its burden to rebut the well-founded fair presumption that Mr. Singh could, one, safely relocate, and two, that it would be reasonable to do so. In response to Mr. Job's arguments, I want to point out in the record that before the immigration judge and the agency, Mr. Singh specifically stated, I believe that's at AR 200, 201, and 202, that his specific fare was from the Punjabi police who harassed him and his family. And that was the claim that he raised before the IJ and before the board. The fact that he's now bringing up state actors in his brief is something that was not exhausted or raised before the agency, and so the agency could not have gleaned from any of his facts or claims that that was an issue that he was making. Based on his claim about his fare of the Punjabi police and his inability to relocate, the agency factored that in. They did their individualized analysis under MZMR and under the regulation and found that based on DHS's submission of country records, which show, again, freedom of movement and internal, freedom of internal movement for Sikhs, that there are Sikhs all over India who are able to participate in SADA party activities. The agency specifically factored in Mr. Singh's claim that he would want to practice, to be a member of his party. So from the government's perspective, and putting aside for a moment the CAD claim, your position is that before the IJ, that the only persecution he referred to was that of the police, the Punjab police. That's absolutely right. That by failing to raise any claims about any other state police outside the state of Punjab or private actors, that he had not exhausted that claim. That's the government's... So anything that might come up later on doesn't change the non-exhaustion issue. Is that correct? Well, one, sorry, just to make sure I'm understanding you right, Your Honor, that there is the exhaustion argument, and that was what the agency considered, the Punjabi police as it relates and whether or not they would be able to use their long arm of enforcement to reach him outside of Punjab. If that answers your question. What I was addressing, I know they talked about with the rent and all that sort of thing, but what I'm talking about is Mr. Jobe indicates that when you have the past persecution presumption that it's the obligation of the IJ and the agency to consider every feasible way in which the petitioner in this case might be subject to the same persecution elsewhere. In this case, because of his membership in an advocacy of the man party. He says that includes any police other than the Punjab police, which are part of the state apparatus, and it also includes private actors, I assume he means by the Congress party. What I thought you said was that because that was not raised, that is the police outside of Punjab or private actors, because that was not raised by him before the IJ and the BIA in the first instance, that that is not exhausted. Is that correct? That is correct, Your Honor. And then I would even go a step further and say that even if this court found that it had been exhausted, which the respondent is not conceding, the record still shows that conditions in India have improved tremendously over the course of the years. And so looking at the record again, where jurisdictions, like Mr. Job said, jurisdictions have their own police. But the government, DHS, did submit evidence showing that these other police are not interested in a Sada party member from the Punjab unless he is a high-profile militant, unless he's a leader, unless he is a terrorist. Then he might come to the attention of the central authorities or the police outside of Punjab. They do not care. And the agency has considered that Mr. Singh might continue in the same activities that he said he would like to. Said he was going to, right? Yes, Your Honor. And there's no suggestion by the agency that Mr. Singh should hide his political opinion or refrain from participating in those activities. The agency considered all of that and found that notwithstanding, because he's not a high-profile militant, because he's not a leader, he would not come to the attention of the central authorities or any police outside. India is a democracy. It's a multicultural country with 1.2 billion persons. Punjab is one state out of 28 or 29. And the government, again, followed MCMR, where they're not required to list or state a specific geographical location. In MCMR, the agency, quoting Nezavik, a decision by this Ninth Circuit, found that it was appropriate, albeit, although in MCMR, the agency did state that the petitioners returned to – in MCMR, I apologize, they did name a city where the petitioner in that case could return to. And I reconcile that, again, by comparing the countries. In MCMR, the petitioner in that case was from Sri Lanka, a country that's much smaller than India, comprised of about 4 million people. In this case, India, 1.2 billion people. And MCMR, quoting Nezavik, where the agency in that case found that it was appropriate for the petitioners to relocate to an area which they characterized as the Serb-held part of Bosnia-Herzegovina. And there, it was appropriate. The agency and the court found, the Ninth Circuit found that it was appropriate for the petitioners. And if I may just draw to this Court's attention, a recent case that was published in July 2008, albeit unpublished, another Singh v. Sessions, and I can provide the Court with the footnote, and they said in that decision, and I quote, the agency did not misapply precedent because it is sufficient to define an area of relocation generally. You can address the CAT claim. Yes. As to the CAT claim, Your Honor, it's Respondent's position that it was not exhausted. And the government submits that if this Court finds that it disagrees, then it would have to be remanded because there was no CAT analysis done. In this case, Petitioner's Brief, I believe, stated or raised the CAT claim in the caption or the subtitle of its claim. They mentioned it in the title on the cover page, in the opening sentences, Request for Relief, and in the concluding sentence, Request for Relief. This Court has specifically stated in ZARA that it expects a specific issue to be raised and challenged by a petitioner. It is quite onerous for the agency, when reviewing hundreds of pages of evidence and issues, to be able to glean from them that a petitioner is disputing one issue. Unless it is... But he did mention it, right, in the caption, in the introduction and the conclusion? Yes, Your Honor. In a summary sentence stating... Well, it sort of gives them a clue. I mean, how do they say he's not raising it? Well, to raise the issue, Your Honor, I would submit that it has to be the issues. The actual issue has to be stated or disputed. What is it that they're challenging? Is it the relocation aspect of it? Is it some other factor? The CAT regulation lists some non-exhaustive factors that need to be considered. And the immigration judge, I believe, considered not just relocation, but they looked at... They looked at... Well, it isn't the immigration issue. It's the immigration at BIA, right, that didn't address it? Right, Your Honor, because they felt that before the board, in between the immigration judge and the board, Mr. Singh had not raised it to the board. He was not put on notice that this was the CAT claim or that the issues, whether it was the relocation, whether it was the past torture, they didn't know what, if any, analysis about the CAT claim was raised. I think our precedent counsel and Figueroa and Zhang, if the board is on notice that the CAT claim is an issue, that's all the obligation. And it's clear, I think, in this case, they were on notice. Your Honor, I respectfully disagree. I'm not shocked. Well, I am, Your Honor. And again, just to say... Just saying... It's not sufficient to just state it in a caption. It's not sufficient to state it in a conclusory statement. It's not sufficient to just... Under the Federal Rules of Appellate Procedure and under ZARA, this Court, the board, Mr. Singh was required to articulate the reasons and consider all the factors that were raised by the immigration judge in making that his claim to the board. And the fact that he didn't do that, didn't give the board, didn't put the board on notice, so the board could then state... You're saying it wasn't on... I'm not sure what you mean by it wasn't on notice. Clearly, the board was on notice that he was appealing that. So you're saying he had to raise, actually argue each part of it? Yes, Your Honor. I would go as far as stating it in the caption or in a conclusion sentence that he... Oh, it's not just for, it's and. And would be sufficient to put the board on notice of the exact issues that he's challenging. Was the case that you rely on for your more detailed requirement? ZARA, Your Honor, and the citation for that. You said ZARA? Yes, I believe it's ZARA v. Ashcroft. And I believe it's in our brief. But I am unable to locate it at this moment. Let me check in the table. Yes, ZARA v. Ashcroft, and that's 383 F. 3rd, 927. Yes, but Figueroa postdates that. Beg your pardon? Figueroa and ZANG postdate that. I'm sorry, Your Honor. I'm not aware of the decision, that case. Figueroa v. Mukasey. 2008 case. I'm afraid I'm not aware. We'll have to take a look at the cases. I think he's referring to Figueroa v. Mukasey, 543 F. 3rd, 487. Yeah. Specifically pages 492 to 493. Do my colleagues have other questions for the government in this case? Thank you, counsel, for your argument. We will now hear rebuttal from Mr. Joe. Thank you, Your Honors. You don't have much, but you've got additional cases to come up here. Just on the issue of exhaustion, Your Honor, and this is at page 18. Obviously, the brief that was filed at the BIA... Hold on one second. He's on rebuttal. He's got... This is wrong here, so... Just one second, please. Okay, go ahead. Obviously, the brief that was filed at the board is not the best example of lawyering, but it says that regardless of whether a respondent has only been targeted by... been of interest to local police, that is the Punjab police, he remains in danger because any type of police, whether local or not, has the ability to track him down and arrest him. Let me ask you this, following up on what my colleagues talked about. The government takes the position that mentioning what would be the catch claim in three different places, but without analysis, is insufficient. What is your best argument that that is enough to put them on notice and that we need to send this back to the BIA? Well, because the catch claim was denied entirely. The only reason the immigration judge gave for denying the catch claim was internal relocation, and that argument was... relocation analysis in the asylum context, and that entire argument was the subject of the brief to the board. Okay. All right, thank you very much. Thank you. The case just argued is submitted.
judges: Fisher, M. Smith, Bucklo